# W. C. TURNBOW PETROLEUM CORPO-RATION v. FULTON.

## No. 6191.

Court of Civil Appeals of Texas.
Texarkana.

Nov. 21, 1946.

Rehearing Denied Nov. 28, 1946.

Clay Cooke, of Fort Worth, and H. P. Smead of Longview, for appellant.

Vinson, Elkins, Weems & Francis and C. E. Bryson, all of Houston, and Florence, Florence & Meredith 'and G. L. Florence, all of Gilmer, for appellee.

WILLIAMS, Justice.

Appellee, Edwin M. Fulton, plaintiff below, in a trial to the court recovered judgment against W. C. Turnbow Petroleum Corporation, defendant below, for legal services allegedly rendered the corporation.

A part of the recovery represents plaintiff's claim for a balance due for legal services rendered in four vacancy land suits in the Upshur county district court, wherein W. C. Turnbow was the defendant. The remainder of the sum recovered represents plaintiff's claim for legal services rendered in the Wilers-Harris-Kelly-Grady suits in the district court of Gregg County, in each of which W. C. Turnbow Petroleum Corporation and W. C. Turnbow were named defendants. The character of the litigation and legal services rendered in the Gregg County litigation is reflected in an opinion

by this court in Kelly et al. v. W. C. Turnbow Petroleum Corporation et al., Tex.Civ. App., 137 S.W.2d 216.

During the period of time here involved W. C. Turnbow, who organized the corporation, served as its president and manager; he, his secretary and members of his family composing its board of directors. The Kelly suit had been filed in Gregg County when according to plaintiff he and W. C. Turnbow entered into an agreement shortly after July 21, 1939, whereby plaintiff was employed to represent Turnbow and the corporation in that litigation. "We had no agreement with reference to the fee. The only trade I had with the corporation and with Mr. Turnbow was I was to represent them both. I charged the corporation a fee for the work done and kept it separate from the work done for Mr. Turnbow and charged him a fee."

After the cause involved in 137 S.W.2d 216, had been remanded to the State district court, defendant filed a debtor's petition in the federal district court at Tyler for reorganization under the Bankruptcy Act, § 77B, 11 U.S.C.A. § 207. Further proceedings in the State court was suspended. Under leave of the federal court stockholders of defendant in behalf of all the stockholders (a class suit) filed suit against W. C. Turnbow wherein they charged him with various acts of fraud, falsification, defalcation, and embezzlement in the management and dissipation of the assets of defendant, which was consolidated with a suit filed by the trustee in bankruptcy as representative of the corporation and alleged creditors.

On final trial the federal court sustained practically every act of wrongdoing therein alleged. The court's findings with respect to the management of the corporation by W. C. Turnbow are lengthy, but briefly stated are in the language of that court as follows:

"As disclosed by the findings of fact there was gross and reckless mismanagement of the affairs of the corporation throughout its domination and control by W. C. Turnbow * * *

"It is impossible to conceive of a more reckless and wanton disregard of a trust relationship than is shown by this entire record. Every cent of return from the vast sources of production of this property throughout its existence used by Turnbow in furtherance of his own personal ends and desires and never one cent of dividend or benefit of any kind paid to any investing shareholder * * *."

Judgment was rendered in favor of all stockholders other than Turnbow for cancellation of 468,085 shares of stock illegally issued to Turnbow and his daughter; and the stockholders other than Turnbow were awarded a recovery against Turnbow for various items of funds misappropriated in the net aggregated sum of $150,00, a lien in this amount being adjudicated against the remainder of Turnbow's stock and other assets. The corporation was found to be solvent; and its petition for reorganization in bankruptcy dismissed September 28, 1944.

The allegations in the Eilers-Harris suit, in the Kelly suit and the Spence-Grady suit, each purporting to be a class suit by stockholders of the corporation, each charged W. C. Turnbow with substantially the same specific acts of wrongdoing, as later plead in the stockholders suit filed in the federal court, and each sought the appointment of a receiver and on final trial judgment against W. C. Turnbow for alleged misappropriation of funds and assets of the corporation, the latter's dissolution and liquidation. It is readily apparent from above pleadings, subsequently sustained in the trial had in the federal court, that the interests of W. C. Turnbow and the corporation were antagonistic and in conflict with each other. Plaintiffs' recovery against defendant corporation for legal services rendered in the Gregg county litigation based under his alleged contract of employment cannot be sustained. 7 C.J.S., Attorney and Client, § 47, and cases there cited; 5 Am.Jur., p. 296; Strong v. International Building, Loan & Investment Union, 183 Ill. 97, 55 N.E. 675, 47 L.R.A. 792; Bryant v. Lewis, Tex.Civ.App., 27 S.W.2d 604; Rochester et al. v. Gonterman, Mo.Sup., 49 S.W.2d 71.

Appellee claims he acted in good faith in his representation of both clients in the Gregg county litigation; that Turnbow

represented to him that the suits had been filed in an effort to extort large sums of money out of him; that upon examination of the corporation records and reputation of the plaintiffs named and their attorneys he became convinced that, the allegations made in the suits were untrue and were attempts to blackmail or extort large sums of money; that the findings in the federal court were had long subsequent to his investigation in good faith of the representations of Turnbow and the books of the corporation; and that by his services he prevented receivership proceedings and the dissipation of its assets in the payment of expenses incident thereto. It is not necessary to dwell upon above element of good faith urged by plaintiff. Applicable here is the rule stated in 5 Am.Jur., p. 296, as follows:

"An attorney owes to his client an undivided allegiance * * * He cannot act both for his client and one whose interest is adverse to or conflicting with that of his client in the same general matter, however slight such adverse interest may be, nor is it material that the intention and mo-. tive of the attorney may have been honest."

See Barreda Corporation v. Ballinger, Tex.Civ.App., 116 S.W.2d 442, 448, and authorities above cited.

The vacancy suits were against W. C. Turnbow, individually, to cancel oil and gas leases which had been taken in the name of W. C. Turnbow and which stood of record in his name at the time of trial. The trials which were completed about May 1, 1939, resulted in judgments in favor of landowners, the plaintiffs in those suits, cancelling the leases. Turnbow represented to appellee at the time he employed him to assist in the defense of the vacancy suits, and still claims that the leases were actually owned by defendant corporation; that he was holding same in trust for defendant and owned or claimed no interest personally in the leases, and that he (Turnbow) had taken them in his own name on advice of an Austin attorney. Plaintiff had been paid $1600 and sues for a balance of $691.15 with interest, for legal services rendered in the vacancy suits.

■ If in fact Turnbow was holding such leases as claimed by him in trust for the benefit of the corporation, which from the evidence presented a question of fact for the trial judge to pass upon, such fact impliedly was so found by the trial court by the judgment rendered which allowed plaintiff a recovery on the claimed balance. We do not feel warranted in disturbing such recovery on the theory that W. C. Turnbow, its president and manager, did not have the authority to employ and bind defendant to pay for such services in the vacancy suits. Bankers Trust Co. v. Cooper, Merrill & Lumpkin, Tex.Civ.App., 179 S.W. 541, 543.

■ Plaintiff's claim was filed in the federal court and there contested. Before action had been taken on the contest, the petition of defendant for reorganization in bankruptcy was dismissed. As a part of the order, the claims of plaintiff and others' not necessary to name were dismissed without prejudice to the right of said creditors to file suits thereon in regular courts of law having jurisdiction. In view of above order, we conclude that the federal court's findings that W. C. Turnbow had illegally used certain funds of defendant (itemizing same) in defense of suits against him is not res judicata or stare decisis of the claim for legal services in the vacancy suits.

■ The Kelly suit is still pending in the Gregg county district court. We are not in accord with defendant's contention that because of this fact such court is clothed with the dominant jurisdiction to hear and determine the issues involved in the instant suit. It does not appear from the pleadings in the Kelly suit that this claim for legal services in the vacancy suits was raised.

The conclusions herein reached render unnecessary a discussion of the other points · presented. The judgment which awards plaintiff a recovery for legal fees claimed in the Gregg county litigation is reversed and here rendered that plaintiff take nothing as to that claim.

This court not having the data with which to calculate the amount of recovery to be decreed for the claimed balance due for legal services rendered in the vacancy suit,

the cause is being remanded with instructions to the trial court to calculate the interest at six per cent. per annum on $691.15 from its maturity date and to enter judgment for such amount with interest.

Reversed and rendered in part, and reversed and remanded in part with instructions.